UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

SOLID 21, INC.,

                                  Plaintiff,

              -against-

RICHEMONT NORTH AMERICA, INC.,
ET AL.,

                                 Defendants.

------------------------------------------------------------ X

:
:
:
:     19 Civ. 1262 (LGS)
:
:     **OPINION AND ORDER**
:
:
:
:

LORNA G. SCHOFIELD, District Judge:

       Plaintiff Solid 21, Inc. ("Solid 21") brings this action against Defendants Richemont

North America, Inc. ("Richemont NA"), Richemont International S.A. ("Richemont

International"), Montblanc-Simplo GmbH ("Montblanc-Simplo") and Officine Panerai A.G.

("Panerai AG").  Plaintiff asserts claims for direct and contributory trademark infringement,

unfair competition, trademark dilution and false description under the Lanham Act, and claims

for trademark infringement, trademark dilution and deceptive acts and practices under New York

Gen. Bus. Law ("GBL") §§ 349 and 360-l and New York common law.  Defendants move to

dismiss the Third Amended Complaint ("TAC") for failure to state a claim.  For the reasons

below, the motion to dismiss is denied in part and granted in part.

## I.      BACKGROUND

       The following facts are taken from the TAC and exhibits attached to it, and are accepted

as true for purposes of this motion only.  *See Yamashita v. Scholastic Inc.*, 936 F.3d 98, 103-04

(2d Cir. 2019).

       Plaintiff owns the "RED GOLD®" trademark for use in connection with "a special

alloying of gold with a distinct color made into fine jewelry," including watches.  Plaintiff uses

this trademark as a brand for its products.  For example, Plaintiff advertises a set of luxury timepieces as part of the "RED GOLD®" collection.  This brand is associated with, and promoted by, celebrities.  The TAC alleges that consumers do not recognize "Red Gold" as a type of metal alloy but as a brand, while the terms "rose gold" or "pink gold" are well-known references to certain alloyed gold.

Defendants are business entities involved in the luxury watch industry.  Each Defendant is a subsidiary of Compagnie Financiére Richemont, S.A. ("CFR").  CFR was previously dismissed as a defendant from this action.  Richemont International, a corporation organized under the laws of Switzerland, designs and manufactures luxury watches for the Baume & Mercier, Montblanc, IWC and Panerai brands, and markets these watches in the United States.  Richemont NA, a Delaware corporation, distributes, sells and also markets these branded watches in the United States.  Montblanc-Simplo and Panerai AG, corporations organized internationally, each design, manufacture, distribute, sell and market in the United States Montblanc- and Panerai-branded watches, respectively.  The TAC alleges that Defendants sold, marketed and advertised watches in the United States using the "RED GOLD®" mark through their websites and U.S. boutique stores.  The TAC also alleges that Defendants supply these watches to third-party retailers -- including Saks Fifth Avenue, Abt, Mr. Porter and Sidney Thomas -- that advertise the goods on their own websites.

The "RED GOLD®" trademark has been the subject of multiple previous trademark and related state law actions around the United States.  In 2011, Plaintiff filed a complaint against CFR and Richemont NA in the United States District Court for the Central District of California, alleging similar claims to those at issue in this case (the "2011 Lawsuit").  In 2014, the parties -- namely, Plaintiff, Defendant Richemont NA and CFR -- entered into an agreement (the

"Agreement"), which tolled the statute of limitations for filing certain claims pending resolution of a third-party litigation (the "Hublot Action").  At issue here is a provision in the Agreement (the "immunity provision") that provides:

> [Solid 21] reserves the right to refile the [2011 Lawsuit] against Richemont ("New Lawsuit") from the date of the Complete and Final Resolution with respect to the [Hublot Action] until twelve (12) months after that date. . . .  [A]ny use of the term Red Gold, or any use of amber or red-hued gold, by or on behalf of Defendants from July 19, 2011 until the time any New Lawsuit is filed shall not be used against Richemont for any purpose in connection with the New Lawsuit.

(TAC, Ex. 11, ¶ 2) (emphasis in original).  The Hublot Action resolved on October 5, 2018.  On February 4, 2019, the 2011 Lawsuit was dismissed without prejudice.  The instant lawsuit was filed on February 8, 2019.

## II.    STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[] their claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  The court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, *see Montero v. City of Yonkers*, 890 F.3d 386, 391 (2d Cir. 2018), but gives "no effect to legal conclusions," *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).  "[A] well-pleaded complaint may proceed even if . . . actual proof of those facts is improbable."  *Twombly*, 550 U.S. at 556.

3

III.    DISCUSSION

With respect to the claims for trademark infringement, unfair competition, trademark dilution and false description under the Lanham Act (15 U.S.C. §§ 1114(1), 1125(a), 1125(c)), common law trademark infringement and injury to business reputation and trademark dilution under New York law (GBL § 360-l), Defendants' motion to dismiss is granted as to Defendant Panerai AG and otherwise denied.  With respect to the contributory infringement claim, the motion to dismiss is granted as to Defendants Panerai AG and Montblanc-Simplo, but not as to Defendants Richemont International and Richemont NA.  Defendants' motion to dismiss is granted with respect to the claim for deceptive acts and practices under New York Law (GBL § 349) as to all Defendants.

A.    The Direct Trademark Claims

Defendants move to dismiss the direct trademark claims -- trademark infringement, unfair competition, trademark dilution and false description under the Lanham Act (15 U.S.C. §§ 1114(1), 1125(a), 1125(c)), common law trademark infringement and trademark dilution under New York law (GBL § 360-l) -- for two principal reasons: (1) the alleged conduct is not actionable because of the Agreement between Plaintiff and Defendant Richemont NA and CFR, and (2) the alleged conduct is fair use.  Defendants also argue that the TAC does not sufficiently allege any direct trademark infringement in connection with the "Panerai brand."  The arguments are evaluated with respect to each Defendant, rather than each brand as Defendant proposes, because each brand does not always correlate with any single Defendant.

1.  Sufficiency of Direct Trademark Claims as to Defendant Panerai AG

The direct trademark claims against Panerai AG are dismissed because they do not sufficiently allege Panerai AG's infringing use.  To prevail on a trademark infringement claim

4

under the Lanham Act and state law, a plaintiff must establish, among other things, that the defendant has made "use in commerce" of the plaintiff's trademark.  *See* 15 U.S.C. §§ 1114(1)(a), 1125(a)(1)(A); *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009); *Salvatore Ferragamo S.p.A. v. Does 1-56*, No. 18 Civ. 12069, 2020 WL 774237, at *2 (S.D.N.Y. Feb. 18, 2020) ("[T]he elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law mirror the Lanham Act claims." (quotation marks omitted)); *Allied Maint. Corp. v. Allied Mech. Trades, Inc.*, 369 N.E.2d 1162, 1164 (N.Y. 1977).  A claim of trademark dilution under the Lanham Act and state law similarly require factual allegations about a defendant's use of the mark.  *See* 15 U.S.C. § 1125(c); *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 736 F.3d 198, 210 (2d Cir. 2013); *IGT v. High 5 Games, LLC*, No. 17 Civ. 9792, 2019 WL 1651608, at *8 (S.D.N.Y. Mar. 29, 2019) (holding that the complaint adequately alleged a "likelihood of confusion," as required under GBL § 360-l, based on allegations of the defendant's "use").

The TAC alleges that Plaintiff owns a valid and legally protectable mark: "RED GOLD®."  After Plaintiff used its trademark to promote its products, including its own luxury watches, Defendants "began selling, marketing, and advertising watches in the United States utilizing the RED GOLD® mark through their websites."  (TAC, ¶ 34).  The TAC delineates the respective business responsibilities of each Defendant and alleges that each Defendant is at least responsible for marketing certain luxury watch brands.  Each Defendant is also responsible for other aspects of the business, including design, manufacturing, distribution or sales.  The TAC also identifies the particular websites through which each Defendant allegedly marketed watches using the "RED GOLD®" mark.

The TAC also includes for each Defendant -- but not for Panerai AG -- well-pleaded factual allegations as to the use of the mark.  The TAC identifies the particular watches that Richemont NA, Richemont International and Montblanc-Simplo marketed or sold, and appends as exhibits advertisements, showing the infringing language and where and when such use occurred.  As the TAC does not include similar allegations describing how Panerai AG used "Red Gold" to sell, market or advertise watches through its website or store, the allegations of use by Defendant Panerai AG are merely "legal conclusion[s] couched as . . . factual allegation[s]."  *Twombly*, 550 U.S. at 555 (citation omitted).  *See Lopez v. Bonanza.com, Inc.*, No. 17 Civ. 8493, 2019 WL 5199431, at *12 (S.D.N.Y. Sept. 30, 2019) (concluding that trademark infringement claims were merely conclusory for failure to identify allegedly infringing items).  *Cf. Kelly-Brown v. Winfrey*, 717 F.3d 295, 306 (2d Cir. 2013) (remarking that the "use in commerce" requirement was sufficiently alleged because there were examples of use).  The direct trademark claims against Defendant Panerai AG are dismissed for failure to state a claim.

### 2.  Agreement

Defendants argue that the claims against the remaining Defendants are barred by the so-called immunity provision in Plaintiff's 2014 Agreement with Richemont NA and CFR.  As explained below, the claims against Richemont International and Montblanc-Simplo are not barred by the Agreement.  The claims against Richemont NA may be pursued only with regard to events that occurred outside of the immunity period.

Under New York law,[1] the determination of a party's contractual obligation begins with "the threshold determination as to whether an ambiguity exists" in the contract, "a question of law to be resolved by the court." *See Greene v. Fast Eats Clifton Park, LLC*, No. 52 Civ. 9539, 2020 WL 2752937, at *1 (3d Dep't May 28, 2020). "A contract is unambiguous if the language it uses has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Williams v. Town of Carmel*, 106 N.Y.S.3d 333, 335 (2d Dep't 2019) (quoting *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002)). "[C]lear contractual language does not become ambiguous simply because the parties to the litigation argue different interpretations." *Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P.*, 869 N.Y.S.2d 511, 517 (1st Dep't 2008), *aff'd*, 920 N.E.2d 359 (N.Y. 2009). Even where contractual language seems unfair, a court cannot "rewrite a contract to include terms the parties have expressly omitted." *People v. Rodriguez*, 123 N.E.3d 255, 261 (N.Y. 2019). Rather, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Condor Capital Corp. v. CALS Inv'rs, LLC*, 118 N.Y.S.3d 29, 29 (1st Dep't 2020) (quoting *Ellington v. EMI Music, Inc.*, 21 N.E.3d 1000, 1003 (N.Y. 2014)).

The immunity provision states:

[Solid 21] reserves the right to refile the [2011 Lawsuit] against Richemont ("New Lawsuit") from the date of the Complete and Final Resolution with respect to the [Hublot Action] until twelve (12) months after that date. . . . [A]ny use of the term Red Gold, or any use of amber or red-hued gold, by or on behalf of Defendants from July 19, 2011

---

[1] New York law applies to this analysis. The Agreement does not include a choice of law provision, and neither party addresses choice of law in their memoranda of law. Plaintiff cites both New York and California law in support of its interpretation of the provision. Defendants cite New York law and federal court cases applying New York law. "[I]n the absence of a strong countervailing public policy, the parties to litigation may consent by their conduct to the law to be applied." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 486 (S.D.N.Y. 2017) (quoting *Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 52 (2d Cir. 1984)).

> until the time any New Lawsuit is filed shall not be used against Richemont for any
> purpose in connection with the New Lawsuit.

(TAC, Ex. 11, ¶ 2) (emphasis in original).  Defendants argue that the second sentence quoted

above bars Plaintiff from bringing claims against any Defendant based on the use of the "RED

GOLD®" mark, in marketing or selling Baume & Mercier-, Montblanc- and IWC-branded

watches, when such use occurred at any time between July 19, 2011, and February 8, 2019 (the

"immunity period").  This argument is incorrect because Defendants' interpretation of the

Agreement is contrary to the plain terms of the contract.

First, Defendants' argument that the provision's plain meaning bars Plaintiff from relying

on any uses of "Red Gold," in bringing a claim against all Defendants involved in marketing or

selling watches by the three *brands* Baume & Mercier, Montblanc and IWC is incorrect.  The

provision states that "any use of the term Red Gold . . . shall not be used against Richemont" in

connection with the instant lawsuit.  The term "Richemont" is unambiguous because the

Agreement defines it as "Richemont North America, Inc. and Compagnie Financiere Richemont,

S.A."  The defined term does not include any of Richemont NA's or CFR's affiliates and

subsidiaries.  Therefore, the immunity provision bars claims and allegations against Richemont

NA and CFR only.

Defendants argue that, since the Agreement resulted from litigation concerning the use of

"Red Gold" in connection with these three brands, Plaintiff cannot evade its contractual

obligation to forbear bringing claims by suing different corporate entities from those that were

parties to the Agreement.  This argument is unpersuasive because the plain terms of the

Agreement do not include any reference to the three brands -- Baume & Mercier, Montblanc and

IWC -- that would tend to support Defendants' interpretation.  Rather, the unambiguous

provision is both narrower and broader than Defendants argue; the provision confers immunity

8

only on Richemont NA and CFR but does not limit their use of "Red Gold" to any brand. Therefore, the Agreement bars allegations in the instant action against Richemont NA only and not the other Defendants.

The immunity provision does not bar all of the allegations against Richemont NA.  The TAC alleges that Richemont NA used the "RED GOLD®" mark outside the immunity period. Specifically, the TAC alleges that Richemont NA (along with Richemont International) sold, marketed and advertised the "Baume & Mercier Hampton magnum XXL PVD Red Gold watch." The TAC's Exhibit 14 is an image of an archived webpage from January 2011, displaying an online advertisement that names and describes this watch with the "Red Gold" reference.  These allegations against Richemont NA are actionable since the Agreement's immunity period begins July 19, 2011.

All the other alleged uses underlying the direct trademark claims are not actionable against Richemont NA because they fall within the immunity period.  Plaintiff argues that the uses in connection with the Montblanc-branded watches are actionable, since they were sold and marketed by Richemont NA (along with Richemont International and Montblanc-Simplo) in a substantially similar manner as shown in Exhibits 15 and 16 from "at least 2011 through 2012," and the immunity period does not include all of 2011.  Exhibits 15 and 16 show archived webpages with advertisements as they appeared on December 2011 and January 2012.  Plaintiff contends that it can be reasonably inferred that the advertisements appeared on the websites prior to those dates, because the TAC alleges that the images are from a source that archives historical webpages in varying frequencies, ranging from weeks to years.  This argument proves too much. The same logic would allow Plaintiff to allege any range of years based on a single archived webpage.

Accordingly, the Agreement does not bar the direct trademark claims against all Defendants.  The claims against Richemont NA may be pursued only with regard to events that occurred outside of the immunity period.

### 3.  Fair Use

Defendants move to dismiss based on the classic fair use defense, except as to the uses presented in the TAC's Exhibits 12 and 13.  This defense is premature at this stage of the litigation for most of the uses.

Classic fair use is an affirmative defense that requires a showing of three elements: "that the use was made (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *Kelly-Brown*, 717 F.3d at 308 (citing 15 U.S.C. § 1115(b)(4)).  Ordinarily, fair use is not appropriate to consider on a motion to dismiss, the purpose of which is only to test the sufficiency of the pleading.  *See id.  See also*, 2 McCarthy on Trademarks and Unfair Competition § 11:49 (5th ed. Supp. 2020) ("Because classic fair use is an affirmative defense, it is normally not appropriate for consideration on a . . .  motion to dismiss for failure to state a claim.").  Fair use can be adjudicated at this stage if the "facts necessary to establish the defense are evident on the face of the complaint."  *Kelly-Brown*, 717 F.3d at 308.  "Plaintiffs, in rebutting defendants' arguments, are held only to the usual burden of a motion to dismiss."  *Id.*

The TAC alleges that Defendants Richemont International and Richemont NA used the mark in an advertisement for the "Baume & Mercier Hampton magnum XXL PVD Red Gold" watch, as shown in the TAC's Exhibit 14; that Defendants Richemont International and Montblanc-Simplo used the mark in advertisements for the "Montblanc Star 4810 Red Gold Chronograph Automatic" and "Montblanc Star Red Gold Chronograph GMT Automatic" watches ("Montblanc advertisements"), as shown in the TAC's Exhibits 15 and 16; and that

Defendant Richemont International used the mark in an advertisement for the IWC-branded Portugieser Minute Repeater watch ("IWC advertisement"), as shown in the TAC's Exhibit 17. Richemont NA is alleged to have used the mark in connection with the Montblanc advertisements and the IWC advertisement, but these uses fall within the immunity period.  The facts necessary to establish fair use are not evident on the face of the TAC and its exhibits for these uses except for the IWC advertisement.

1.   "Other than as a mark"

Defendants argue that these uses were made "other than as a mark," because they occurred in connection with the sale of their watches on their own webpages with their brand and product line names clearly identified.  Defendants are incorrect except as to the IWC advertisement.  Use as a mark is the "us[e] [of a] term as a symbol to attract public attention."  *Kelly-Brown*, 717 F.3d at 306 (quotation marks omitted).  "A trademark use occurs when a mark indicates the source or origin of consumer products."  *Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 424 (S.D.N.Y. 2008), *aff'd*, 329 F. App'x 333 (2d Cir. 2009).  The proximity of a defendant's own marks is one factor in analyzing the first element of fair use.  *See Kelly-Brown*, 717 F.3d at 311.  The broader context of a defendant's use can also be significant. *See id.* at 310-311 (explaining that the Second Circuit has found crucial whether "[t]he challenged phrase . . . appear[ed] on . . . any other advertising or promotion materials" (quoting *Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 31 (2d Cir. 1997)).  *See also*, 2 McCarthy on Trademarks and Unfair Competition § 11:48.50 (5th ed. 2020) ("Overuse of another's trademark, even in a descriptive sense, may not be a fair use.").  The TAC alleges that Defendants used the mark in a prominent manner to attract buyers by creating an appearance that their watches were affiliated with Plaintiff's brand.  Based on the TAC's

11

Exhibits 14 to 16, "Red Gold" appears in the headings of the product listings of the luxury watches -- the same type of products as Plaintiff's -- in an identical font type and size as the products' brand name.  The uses in the advertisements' product headings can be plausibly understood as an effort to create the appearance of collaborating with Plaintiff, even where the advertisements appear on Defendants' websites displaying their own brand and product lines.  The TAC also alleges that these uses are examples of multiple infringing uses by Defendants and that the watches were marketed on the websites in a "substantially similar manner" as the exemplary advertisements for periods of time.  These allegations lead to an inference that these uses were repetitive for the purpose of creating an association with Plaintiff's brand.

Defendants also address uses in the product descriptions.  Whether the totality of uses in an advertisement presents non-trademark use overall is a question that cannot be addressed based on the TAC and exhibits.  Defendants' use of "Red Gold" in both product headings and descriptions plausibly suggests that the use in the headings is independently significant.  Even though Defendants could have referred to "red gold" in the product descriptions only, this term was significant enough to place in the headings.  This inference is reasonable in light of the TAC's allegations that consumers of these goods are typically affluent and decide to purchase items quickly.

Non-trademark use is evident in the IWC watch advertisement shown in Exhibit 17.  The term "red gold" occurs in the product description only, is used in prose and appears inconspicuously below a large product heading.  *See JA Apparel Corp. v. Abboud*, 682 F. Supp. 2d 294, 313 (S.D.N.Y. 2010) (descriptive non-trademark use where allegedly infringing use of a name appears "in significantly smaller font" than the defendant's own brand and is "placed in the lower left-hand corner of the ad").

2.   "In a descriptive sense"

Defendants argue that "Red Gold" is used to describe the material of the watches, which is evident because the term follows other descriptive words.  Based on the TAC and its exhibits, it is not evident that all uses of "Red Gold" are descriptive, except in the IWC advertisement.  "A use of a mark is descriptive if the words were used to describe the ingredients, quality or composition of a product, not the source of the product."  *Dessert Beauty, Inc*, 568 F. Supp. 2d at 425 (quotation marks omitted).  "Whether a use is descriptive must be determined by assessing the manner in which the mark is used with respect to the product or service sold by the alleged infringer."  *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 65 (2d Cir. 2000).  Descriptive sense is often evident "[w]here a mark incorporates a term that is the only reasonably available means of describing a characteristic of another's goods."  *Id.*  The TAC alleges that consumers do not identify "Red Gold" as a "type of specific metal alloy in the United States" but rather as Plaintiff's brand.  The TAC also alleges that "Red Gold" is not the only "reasonably available" description: if Defendants sought to describe the watches' material, they would have used the "well-known" terms: "rose gold" or "pink gold."  In light of these allegations, it is not plainly evident whether the terms in the following product headings describe a quality of the watch or is a mark:  "Baume & Mercier Hampton magnum XXL PVD Red Gold," "Montblanc Star 4810 Red Gold Chronograph Automatic" and "Montblanc Star Red Gold Chronograph GMT Automatic."  *See Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 413 (S.D.N.Y. 2006) (Chin, J.) (declining to conclude at the motion to dismiss stage that the phrases "generic ZOCOR," "ZOCOR generic," or "ZOCOR—generic" were primarily a descriptive use of "ZOCOR" marks).  Although the descriptions beneath the

13

headings do use "red gold" to describe the watches' qualities, it is plausible, as discussed above, that the prominent uses should be considered separately significant.

The uses in the IWC advertisement are descriptive.  The term appears in the following phrase only: "Limited edition of 500 watches each in platinum and 18-carat red gold."  In this context, the only plausible reading of the term is "red-colored gold," even if "red gold" may not be known to consumers as a type of metal alloy.  *See JA Apparel*, 682 F. Supp. 2d at 313 (descriptive non-trademark use where name appears in the context of a complete sentence).

### 3.  "In good faith"

The third requirement for fair use -- good faith -- is addressed only as to the IWC advertisement, because the other uses do not qualify as fair use as discussed above.  *See Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 457 (2d Cir. 2013) (explaining "fair use" factors are conjunctive).  Defendants argue that the uses were in good faith because the term was used to describe the watches' material and because Defendants also used their own marks in the advertisements.  Defendants are correct as to the IWC advertisement, where the use was done other than as a mark and in a descriptive manner.

To determine good faith, a court considers whether a "defendant in adopting its mark intended to capitalize on plaintiff's good will," "the overall context in which the marks appear and the totality of factors that could cause consumer confusion."  *EMI Catalogue*, 228 F.3d at 66. The "display of defendant's own name or trademark in conjunction with the mark it allegedly infringes," is one indication of good faith.  *See id.* at 67.  Another factor that a court may consider in assessing "consumer confusion" is the similarity of the products at issue.  *See Dessert Beauty, Inc.*, 568 F. Supp. at 428.  While the products at issue are similar in several respects -- they are luxury watches that fall within the same price range and are intended for the same

segment of consumers -- it is evident that the uses in the IWC advertisement could not have been for the purpose of promoting confusion as part of Defendants' alleged strategy to exploit the "cachet" of Plaintiff's brand.  As discussed above, the term is not used in a manner to attract public attention and is used descriptively.  Therefore, fair use is not evident on the face of the TAC and its exhibits as to any of the uses underlying the direct infringement claims, except the IWC advertisement.

Defendants' motion to dismiss is denied as to the direct trademark claims against all Defendants, except that (i) claims against Richemont NA may be pursued only with regard to events that occurred outside of the immunity period and (ii) claims may not be pursued with regard to the IWC advertisement shown in Exhibit 17.

### B. Contributory Infringement

The contributory infringement claims are dismissed based on the doctrine of fair use, except for the claim against Defendants Richemont International and Richemont NA with respect to Abt's offer of sale shown in Exhibit 19.  "Contributory trademark infringement is a judicially created doctrine that derives from the common law of torts." *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 103 (2d Cir. 2010).  Contributory trademark infringement is predicated on the existence of direct infringement. *See id.* (describing "contributory trademark infringement" as "culpably facilitating the infringing conduct").  Here, most of the uses of "Red Gold" by the retailers shown in Exhibits 18 to 22 are not actionable, because it is clear from the face of the TAC and its exhibits that the term was used in a manner that constitutes fair use.

The offers of sale by Saks Fifth Avenue (Exhibit 18), Mr. Porter (Exhibits 20 and 21) and Sidney Thomas (Exhibit 22) use the term "Red Gold" in a manner that is clearly descriptive and not as a mark.  All of the uses are in a significantly smaller typeface beneath the product

headings that furnish Defendants' brand names.  Further, all uses of "Red Gold" in these advertisements are also accompanied by words that clarify the use is illustrative.  Specifically, "Red Gold" either occurs in an adjective phrase modifying the word "watch," such as "18K Red Gold & Alligator Strap Watch," or is preceded by the descriptive term "18-K."  The TAC's allegations that consumers do not know "Red Gold" as a type of metal alloy but as a brand, do not rebut these descriptive uses where the only reasonable reading of the term is "red-colored gold."  These uses are unlike the advertisements underlying the direct infringement claims, which include "Red Gold" in the headings of the product listings and are not obviously modifying any noun ("Baume & Mercier Hampton magnum XXL PVD Red Gold – 8825," "Montblanc Star 4810 Red Gold Chronograph Automatic" and "Montblanc Star Red Gold Chronograph GMT Automatic").  Good faith is evident based on these uncontroverted descriptive uses.  Also, the TAC does not adequately allege bad faith on the part of retailers.  It merely states that "Defendants understand that retailers would be eager to prominently feature" the term in marketing their products.

Fair use is not evident in Exhibit 19, Abt's offer of sale of Richemont International's and Richemont NA's Baume & Mercier watch.  The same analysis above -- finding the fair use defense premature as to most of the direct trademark uses -- applies here.  In Abt's product listing, the heading states, "Baume & Mercier 39mm Clifton Red Gold Mens Watch – 10058." "Red Gold" appears in the same-sized font as the other terms and without any modifiers, like "18-K."  This use in the product heading can be plausibly understood as a mark to gain attention, in an effort to associate the product with Plaintiff's brand.

Since most of these uses are not actionable, there are no predicate infringing uses to find Defendants liable for contributory infringement, except for Defendants Richemont International

and Richemont NA with respect to Abt's offer of sale shown in Exhibit 19. Defendants do not

make any separate legal arguments as to the sufficiency of the contributory infringement claim.

The motion to dismiss the Third Cause of Action is granted as to Defendants Panerai AG and

Montblanc-Simplo, and denied as to Defendants Richemont International and Richemont NA

with regard to Abt's offer of sale.

### C.    Unfair and Deceptive Trade Practices under State Law (GBL § 349)

Defendants' motion to dismiss the claim of deceptive acts and practices under GBL § 349

is granted. Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business

trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law §

349(a). To state a Section 349 claim, a plaintiff must show that "(1) the defendant's deceptive

acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the

plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)

(citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741,

744 (N.Y. 1995)).

Defendants are correct that trademark infringement claims are not cognizable under

Section 349 unless there is a separate and distinct harm to the public interest. *See DePinto v.

Ashley Scott, Inc.*, 635 N.Y.S.2d 215, 217 (1st Dep't 1995) (affirming dismissal of Section 349

claims based on trademark infringement since they did "not pose a significant risk of harm to the

public health or interest"); *Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 352 (S.D.N.Y. 2014)

(collecting cases). While the TAC alleges facts showing that Defendants' references to "Red

Gold" could mislead a consumer, the TAC does not allege facts that give rise to the inference

that consumer confusion would affect the public health or interest. Defendants' motion to

dismiss the Ninth Cause of Action is granted.

17

**IV.     CONCLUSION**

All of the parties' arguments have been considered, and to the extent not explicitly discussed, the arguments are either moot or without merit.

For the foregoing reasons, the motion to dismiss is GRANTED in part and DENIED in part.  Defendant Panerai AG is dismissed from the case.  The Third Cause of Action (Contributory Trademark Infringement) may proceed against Defendants Richemont International and Richemont NA only, with regard to Abt's offer of sale shown in Exhibit 19.  The Ninth Cause of Action is dismissed (GBL § 349) as to all Defendants.  The remaining claims survive as to the remaining Defendants -- Richemont International, Richemont NA and Montblanc-Simplo -- except that (i) claims against Richemont NA may be pursued only with regard to events that occurred outside of the immunity period, either before July 19, 2011, or after February 8, 2019, and (ii) claims may not be pursued with regard to the IWC advertisement shown in Exhibit 17.

The Clerk of Court is respectfully directed to close Dkt. No. 68.

Dated: June 8, 2020
        New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

18