

David L. Hecht
Partner
P: (212) 851-6821
E: dhecht@hechtpartners.com

July 29, 2021

**VIA ECF**

Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

**RE:** <u>*Solid 21, Inc. v. Richemont North America, Inc. et al.*, **No. 1:19-cv-01262-LGS**
**Plaintiff's Pre-Motion Letter**</u>

Dear Judge Schofield,

Pursuant to the Fourth Amended Scheduling Order (Dkt. No. 119), ¶ 13 and Your Honor's Individual Rule III.A.1, Plaintiff Solid 21, Inc. ("Plaintiff" or "Solid 21") submits this Pre-Motion Letter ahead of the Pre-Motion Conference, currently scheduled for August 12, 2021 (Dkt. No. 121).  Plaintiff intends to file a motion for summary judgment on Defendants' First Affirmative Defense and First and Second Counterclaims, where Defendants contend that the RED GOLD® trademark at issue is invalid due to genericness.

While Defendants purport to argue that the RED GOLD® mark is generic, all their arguments and evidence at best show that the mark is descriptive, rather than generic.  But the RED GOLD® mark has been incontestable since 2009.  Its incontestable status precludes a trademark challenger from invalidating the mark due to descriptiveness.

**Background on the RED GOLD® Trademark**

Since 1989, Plaintiff has continuously used its RED GOLD® trademark in commerce in connection with its line of fine jewelry and luxury watches.  Plaintiff built RED GOLD® into a distinctive brand, popular with celebrities and prominently adorned by musicians, athletes, performers, and the like.  In 2003, RED GOLD® became a federally registered trademark.  Dkt. No. 67-1 at 4.  In 2009, Plaintiff submitted a declaration to the U.S. Patent and Trademark Office pursuant to 15 U.S.C. § 1065 setting forth that the RED GOLD® mark met the requirements for incontestability.  Dkt. No. 67-2.  RED GOLD® has been an incontestable mark since that time.

RED GOLD®'s success did not go unnoticed by the watch and jewelry industry.  After RED GOLD® became a federally registered mark, a number of copycats began using the mark in order to capitalize on its popularity.  The Defendants here are one of those copycats, who began using the RED GOLD® mark in violation of Plaintiff's exclusive right to use the mark in commerce.

July 29, 2021
Page 2

### Spectrum of Trademark Distinctiveness

Trademarks are classified in one of four categories, in descending order of strength: (1) arbitrary, (2) suggestive, (3) descriptive, or (4) generic.  *Star Industries, Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 384-85 (2d Cir. 2005).  On one end of this spectrum, arbitrary marks are considered the strongest because they bear no relation to the product.  *Id.*  Suggestive marks refer to some characteristic of the product, but require a leap of imagination to get from the mark to the product.  *Id.*  Descriptive marks identify a characteristic, quality, or ingredient of the product.  *Gruner + Jahr USA Pub. v. Meredith Corp.*, 991 F.2d 1072, 1076 (2d. Cir. 1993).  Finally, generic marks refer to the genus of which a particular product is a species.  *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985).  Of these four categories, a generic mark is the only one that is ineligible for trademark protection.  *See Star Industries*, 412 F.3d at 385.

### Implications of Trademark Incontestability

With the Lanham Act, Congress concluded that the goals of promoting competition in the marketplace and ensuring product quality would be best served by securing to a trademark holder the benefits of good reputation.  Towards this end, one of the mechanisms by which the Lanham Act encourages a trademark holder to develop and cultivate the goodwill of their mark is to achieve incontestable status for the mark.  *Park 'N Fly*, 469 U.S. at 198.  Incontestability serves as a means for the mark holder to quiet title in their ownership by enhancing the mark's strength.  *Id.*  Among other ways, incontestability enhances a mark's strength by narrowing the grounds upon which that mark's validity may be challenged.  *Gruner + Jahr USA*, 991 F.2d at 1076-77.  While all marks may be challenged on the basis that they are generic, incontestable marks may no longer be challenged on the basis that they are descriptive.  *Park 'N Fly*, 469 U.S. at 205.

### Defendants Fail to Show That RED GOLD® is Generic

In Defendants' Answer to the Third Amended Complaint (Dkt. No. 98), their First Affirmative Defense, First Counterclaim, and Second Counterclaim are based on their contention that the RED GOLD® mark is generic because the term "Red Gold" is the common term for a type of gold alloy that has a particular tint used as a material in the construction of watches and jewelry.  This is echoed in Defendants' discovery responses, fact witness testimony, proffered expert opinions, and all of their marshaled evidence.  While Defendants are wrong on this point, for the purposes of its motion, Plaintiff takes this as true.  Because even if this is true (which it is not), all Defendants have accomplished is to show that RED GOLD® is a descriptive mark, not a generic one.  But merely showing that the incontestable RED GOLD® mark is descriptive is not sufficient to invalidate it.

A descriptive mark conveys a characteristic, quality, ingredient, or component of a product.  *See Gruner + Jahr USA*, 991 F.2d at 1076; *Haydon Switch and Instrument, Inc. v. Rexnord, Inc.*, Civ. No. N 86-190(JAC), 1987 WL 26062, at *7-8 (D. Conn. June 4, 1987); s*ee also Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1183 (5th Cir. 1980) (a "descriptive" term identifies a characteristic or quality of an article or service, as, for example, its color, odor, function, dimensions, or ingredients) (internal quotations and citations omitted).  In contrast, a

July 29, 2021
Page 3

generic term refers to a genus or class of which a product or service belongs; it depicts the product or service as a whole, rather than any particular feature, quality, or characteristic of that produce or service. *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1358 (11th Cir. 2007); *Haydon Switch and Instrument*, 1987 WL 26062, at *7.

Here, even if it is true that "Red Gold" is a common term for a type of gold alloy, all that would mean is that RED GOLD® is, at best, a descriptive mark. This is because the class of goods covered by the RED GOLD® registration is not gold, or gold alloys, or anything of that sort. The registration sets forth that the pertinent class of goods is jewelry, including watches:

> Fine jewelry made of a special alloying of gold with a distinct color made into fine jewelry, namely, watches, necklaces, bracelets, rings, anklets, cuff links, ornamental hair pins, belt buckles of precious metal, tie clips and pegs, and earrings, in Class 14.

Dkt. No. 67-1 at 4.

None of the parties in this case sell gold or gold alloys; they all sell jewelry and watches that may contain components made of gold or gold alloys. Likewise, the RED GOLD® trademark registration does not cover gold or gold alloys. Thus, even crediting Defendants' erroneous contention that "Red Gold" is a common term for a type of gold alloy, all that would mean is that "Red Gold" is an ingredient (gold alloy) used in a component (which could be the bezel, case, strap, etc.) of a product (such as a watch). The case law is crystal clear that this would make a mark, at best, descriptive and not generic. *See, e.g.*, *American Exp. Marketing and Development Corp. v. Black Card LLC*, No. 10 Civ. 1605(DLC), 2011 WL 5825146, at *7-8 (S.D.N.Y. Nov. 17, 2011) (where product at issue was a credit card, the BLACKCARD mark was descriptive because it conveyed a feature or characteristic of the product – its black color).

The RED GOLD® mark, being incontestable, cannot have its validity challenged on the ground that it is descriptive. Defendants have re-branded their invalidity contention as being based on genericness, rather than descriptiveness, in order to circumvent this restriction. Because of the foregoing, Plaintiff intends to move for summary judgment on Defendants' First Affirmative Defense and their First and Second Counterclaims.

Sincerely,

 /s/ David L. Hecht
David L. Hecht

cc: Counsel of Record