| | |
|---|---|
| SOLID 21, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>RICHEMONT NORTH AMERICA, INC.;<br>RICHEMONT INTERNATIONAL S.A.; and<br>MONTBLANC-SIMPLO GMBH,<br><br>    Defendants. | Civil Action No. 1:19-cv-01262-LGS |

**PLAINTIFF SOLID 21, INC.'S MOTION IN LIMINE TO EXCLUDE
THE REPORT AND EXPERT TESTIMONY OF GARY SMITH**

Plaintiff Solid 21, Inc. ("Plaintiff" or "Solid 21") moves to exclude the expert testimony of Gary Smith, who has been proffered as an expert witness by Defendants Richemont North America, Inc. ("RNA"), Richemont International S.A. ("RSA"), and Montblanc-Simplo GmbH ("Montblanc") (collectively, "Defendants" or "Richemont").

**I.      LEGAL STANDARD**

Because expert testimony can be "quite misleading" to the jury, district courts act as gatekeepers by making a preliminary assessment of whether an expert's opinion is admissible under Federal Rule of Evidence 702 and not unfairly prejudicial under Rule 403. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–95 & n.10 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

In *Daubert*, the United States Supreme Court held that the Federal Rules of Evidence require a trial court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. at 592–93.

A mark is generic when the primary significance of the mark to the relevant purchasing public is as a common name to identify goods or services as opposed to a brand name for those goods and services. 15 U.S.C. § 1064(3) (Trademark Clarification Act of 1984) ("The primary significance of the registered mark to the relevant public...shall be the test for determining whether the registered mark has become the generic name of goods or services...."); *id*. ("A registered mark shall not be deemed to be the generic name of goods or services solely because such mark is also used as a name of or to identify a unique product or service."); *Magic Wand, Inc. v. RDB, Inc*., 940 F.2d 638, 641 (Fed. Cir. 1991) ("In sum, the 1984 amendment makes the

1

test for genericness the primary significance of the mark to the relevant public limited to the actual or potential purchasers of the goods or services.") (emphasis added).

## II. ARGUMENT

This Court should exclude Mr. Smith because he has not presented any analysis for his bald conclusions. His opinion does not assist the trier of fact to determine a fact in issue. As discussed below, Richemont cannot meet their burden under Federal Rule of Evidence 702, and even if it could, the prejudice and confusion that the testimony of Mr. Smith would cause in connection with the majority of the material he presents is sufficient reason to exclude him testimony under Federal Rule of Evidence 403.

### A. Mr. Smith Presents No Analysis and Fails to Focus on the Relevant Consuming Public

Mr. Smith purports to opine on genericness. When determining if a mark is generic, the key question is the primary significance of the registered mark to the relevant public, known as the primary significance test. *Tiffany & Co. v. Costco Wholesale Corp.*, 994 F. Supp. 2d 474, 480 (S.D.N.Y. 2014). It is not just the public, but the relevant *consuming* public, that is relevant to this inquiry. *See Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 113–14, 59 S. Ct. 109, 111, 83 L. Ed. 73 (1938) (holding under the primary significance test courts analyze consuming public's understanding of mark). Here, the relevant consuming public are **actual or potential purchasers of high-end luxury watches**. *See e.g.* Dkt. 67 (Third Amended Complaint) at ¶48. Indeed, the trademark-in-suit was registered with respect to *fine jewelry and watches*. Dkt. 62-1.

Mr. Smith's opinions focus on the wrong group—consumers of the materials used to create watches, *i.e.*, alloys, and *not* consumers of watches and jewelry. *See* Hecht Decl., Ex. 1, ¶8-103 (Section IV) ("Red Gold is a Generic Term for Alloys Including Pure Gold and Copper." This case does not involve alloys, nor does either party sell alloys. Mr. Smith will not offer the

2

jury any opinion as to what the relevant consuming public of watches and jewelry would understand the term RED GOLD to mean in the context of the products at issue, watches and jewelry. Mr. Smith does not even attempt to opine as to why the slew of references he presents would be relevant to, or considered by, the relevant consuming public. *See e.g.* Ex. 1 at ¶¶16-36, 39-87, 89-103.

Parts B through E of Section IV of Mr. Smith's report simply list out a bevy of sources that contain the words "Red Gold," including many sources cribbed from Mr. Lent, an expert who played a similar role as Mr. Smith in the *Hublot* case. Mr. Smith offers no additional insight or opinion on or about these sources. For example, Part B lists "References and Formulas for Red Gold in Dictionaries and Technical Texts." Mr. Smith does not comment on any of these materials and simply paraphrases or quotes from each source, which speak for themselves. *See e.g.* Ex. 1 at ¶¶16-26.

Dictionary definitions may be relevant to determine genericness, but only to the extent they inform the jury as to the relevant inquiry, i.e., the primary significance to the purchasing public of the relevant goods and services. Dictionary definitions, however, "may not reflect word meaning among those persons who purchase the particular products involved." Gilson on Trademarks, § 2.05[3][c] at 2-112 (2007); *Berner*, 987 F.2d at 983; *Dorr-Oliver Inc. v. Fluid-Quip, Inc.*, 834 F. Supp. 1008, 1017 (N.D. Ill. 1993).

Here, the majority of the dictionary definitions relied on by Mr. Smith cannot be indicative of the primary significance of the term RED GOLD to the relevant purchasing public

because the sources are focused on metallurgists,[1] and have no bearing on the meaning of RED GOLD to the relevant purchasing public of watches and fine jewelry.

Even assuming that "red gold" was used in a couple of dictionaries around the turn of the last century, that does not mean that the relevant consuming public today would look to those sources to understand the term. In any event, Mr. Smith offers no opinion that would explain how these sources are relevant or assist the jury; he only offers the sources themselves with the blanket conclusion that they support genericness.

The remainder of Mr. Smith's report fares no better, continually introducing references that Mr. Smith doesn't even opine would have been considered by the relevant consuming public, including references that are plainly meant for jewelers or watchmakers (*e.g.*, "Jewelry and Watchmaking Reference Materials"), and not consumers. *See e.g.* Ex. 1 at ¶¶27-36, 43, 50-52. Other references relied upon are not United States publications, like the Vancouver Sun, and Mr. Smith does not introduce any basis for their consideration or relevance to the consuming public. *Id*. at ¶55.

Mr. Smith's section on "Usage of 'Red Gold' in Publications Targeting Laypeople from the Early 19th Century to Present" (Part F) again fails to present any analysis with respect to the relevant consuming public *today*. Here, with respect to watches, Mr. Smith can only identify two publications that included the phrase RED GOLD, both of which hail from the early 20th century around the time of the second World War. Ex. 1, pp. 17-20. The fact that such usage existed long ago does not mean that the relevant consuming public decades later would understand RED GOLD in the same context with respect to watches and jewelry

---

[1] The referenced dictionaries include highly technical dictionaries (or "technical texts" as Mr. Smith describes them). See e.g. Ex. 1 at ¶16, 17, 23. Even those dictionaries that do not seem to be technically oriented are over a century old and "red gold" is similarly defined in the context of alloys—not watches and jewelry: *See id*. at ¶18, 19, 21.

4

In sum, Mr. Smith presents no information or opinion regarding the relevant consuming public's impression of RED GOLD at any relevant time period (instead focusing on a type of alloy that jewelers and watchmakers – but not the public -- have allegedly used "for more than 150 years"). Ex. 1, ¶141. Mr. Smith should not be permitted by this Court to provide the jury with reams of references that utilize the words "red" and "gold," while failing to provide any analysis or methodology for his opinion that the term RED GOLD is generic.

### B. Mr. Smith's Sampling of Solid 21's Jewelry is Irrelevant and Contains Highly Prejudicial and Irrelevant Conclusions

In addition to genericness, Mr. Smith also tests jewelry from Solid 21, and Richemont watches from IWC, Montblanc, and Baume & Mercier, with respect to their alloy content. This is puzzling as the composition of Solid 21's jewelry is not at issue in this case nor is it relevant to the inquiry of genericness of the mark. Mr. Smith concludes by opining that Solid 21's items are falsely marked "in violation of FTC regulations contained at 16 CFR 23," which has no bearing on this case. (Ex. 1 ¶139.) Mr. Smith offers this opinion without purporting to have any particular experience in this area (compliance with FTC regulations) or establishing that the piece of jewelry he tested was representative of Solid 21's entire collection.

Accordingly, these opinions regarding Solid 21's jewelry should be excluded as wholly irrelevant and highly prejudicial.

### III. CONCLUSION

For the foregoing reasons, Solid 21 respectfully asks this Court to exclude the Expert Report and Testimony of Mr. Smith.

Dated: October 31, 2022

                                                  */s/ David L. Hecht*
                                                  David L. Hecht
                                                  Hecht Partners LLP
                                                  125 Park Avenue, 25th Floor
                                                  New York, NY 10017
                                                  P: (212) 851-6821
                                                  dhecht@hechtpartners.com

                                                  *Counsel for Plaintiff Solid 21, Inc.*

# CERTIFICATE OF SERVICE

I, David L. Hecht, hereby certify that on October 31, 2022, I served a true and correct copy of the foregoing **PLAINTIFF SOLID 21, INC.'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF DAVID NEAL** to counsel of record via electronic filing.

> _/s/ David L. Hecht_
> David L. Hecht