UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SOLID 21, INC.,<br><br>Plaintiff,<br><br>v.<br><br>RICHEMONT NORTH AMERICA, INC.;<br>RICHEMONT INTERNATIONAL S.A.; and<br>MONTBLANC-SIMPLO GMBH,<br><br>Defendants. | Civil Action No. 1:19-cv-01262-LGS |

**PLAINTIFF SOLID 21, INC.'S MOTION IN LIMINE TO EXCLUDE EXPERT
<u>TESTIMONY OF MARK KEEGAN</u>**

I.     INTRODUCTION

Plaintiff Solid 21, Inc. ("Solid 21") moves to exclude Mark Keegan from testifying as an expert. Mr. Keegan conducted a survey which purports to measure "brand awareness" of "Red Gold" by showing respondents images of Richemont advertisements that he chose and asking them to identify the brands they see in the images. Ex. 2, ¶¶ 1-3, 16, 21-22. Based on this, he concluded that 0.1 to 0.6% of his survey respondents identified "Red Gold" as a brand. *Id.*, ¶¶ 73-74, 95. Not only is Mr. Keegan unqualified, but the survey is also fatally flawed in that it is unhelpful to the factfinder and was not conducted according to accepted survey principles.

II.    LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. *In re Rezulin Prods. Liability. Litig.*, 309 F. Supp. 2d 531, 539-40 (S.D.N.Y. 2004). The trial court's role is to serve as a "gatekeeper" to ensure that expert testimony is both relevant and reliable. *See Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993). In order to fulfill its "gatekeeper" role, the court must determine whether (1) an expert is qualified to testify competently on matters which he intends to opine on; (2) the expert reaches his conclusions by sufficiently reliable methodology; and (3) the expert's testimony assists the trier of fact. *See In re Rezulin Prods. Liability. Litig.*, 309 F. Supp. 2d at 539-40 (citations omitted). The burden is on the proponent of the expert testimony to prove each of these three elements by a preponderance of the evidence. *Id.*

III.   MR. KEEGAN IS UNQUALIFIED

Richemont cannot meet its burden of establishing Mr. Keegan's qualifications under Rule 702. His curriculum vitae fails to evidence sufficient expertise. While he has a History degree and Juris Doctor as well as some additional coursework, he has no degree relating to consumer

surveys. He began working for his own company (Keegan & Company, LLC) in 2001, and his experience is described as "[l]itigation consulting and testifying expert for corporate clients across a broad range of industries for cases in state and federal courts and before administrative agencies." Ex. 1 at 1-2. This is not enough.

Other courts have concluded that he is unqualified as an expert on multiple occasions. In *Flushing Bank v. Green Dot Corp.*, this court found Keegan's opinions wholly unreliable:

> The Court does not find that Keegan's background in surveys is sufficiently deep or tested to provide a reliable basis for his criticisms. The Court is troubled by what appears to be a large amount of "cutting and pasting" between a prior report and this report, potentially reflecting off-the-shelf criticism.

138 F. Supp. 3d 561, 580 n.16 (S.D.N.Y. 2015). Likewise, another court held that Mr. Keegan was unqualified to render expert testimony on consumer surveys:

> The education and experience outlined in Keegan's biography is insufficient to establish that he is an expert in the field of consumer surveys. The biography provides no indication that he has any special training or experience in crafting or analyzing consumer perception surveys; in fact, the biography does not suggest that he has any experience or training in crafting surveys of any kind.

*Warner Bros. Entm't v. Glob. Asylum, Inc.*, Case No. CV129547PSGCWX, 2013 WL 12114836, at *7 (C.D. Cal. Jan. 29, 2013), *aff'd sub nom.* 544 F. App'x. 683 (9th Cir. 2013). The same result should apply here.

**IV.   MR. KEEGAN'S TESTIMONY IS IRRELEVANT AND UNHELPFUL TO THE TRIER OF FACT**

Even if he were qualified, Mr. Keegan's opinions should be excluded because they are not relevant to any claim or defense at issue in this Action. By Keegan's own explanation, his survey tested for consumer awareness of the term "Red Gold" as a brand when it appears in Richemont's marketing materials and the extent to which it impacts their purchase decision. Ex. 2, ¶ 2. It is clearly not useful as a genericness survey as it is not one of the genericness survey

formats accepted by courts (*Teflon* or *Thermos* type surveys). It is also not designed to measure any likelihood of confusion (like the *Eveready* or *Squirt* type surveys). Its only use in this case is that Richemont's damages expert, Dr. Kennedy, uses Mr. Keegan's survey to apportion damages.[1] But this is inappropriate as Mr. Keegan admitted he is not being proffered as an expert on any element of damages. Ex. 3 at 10:20 – 11:6. Absent apportionment, there is nothing that this survey will tend to more or less prove – whether the RED GOLD® mark is valid or whether Richemont's use infringes on it. Therefore, Keegan's opinions and survey should be excluded as irrelevant and unhelpful to the factfinder.

## V. MR. KEEGAN'S SURVEY IS FATALLY FLAWED

The party offering surveys into evidence should establish, *inter alia*:

> (1) that the proper universe was selected and examined; (2) a representative sample was drawn from that universe; (3) a fair and correct method of questioning the interviewees was used; (4) the persons conducting the survey were recognized experts; … (6) the sample, the questionnaire and the interviewing were in accordance with generally accepted standards of objective procedure and statistics in the field of such surveys … .

*Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*, 533 F. Supp. 75, 79 (S.D. Fla. 1981), *aff'd*, 716 F.2d 854 (11th Cir. 1983) (citation omitted). As discussed above, courts in trademark cases generally accept surveys that fall into several different models (*i.e.*, *Eveready* and *Squirt* models for likelihood of confusion, and *Teflon* and *Thermos* surveys for genericness challenges). Here, Mr. Keegan does not identify a particular model of survey that he followed. Not only that, his survey is flawed for at least three additional reasons: 1) the stimuli images were too small for respondents to reliably view, 2) the surveyed universe was overbroad, and 3) many respondents failed to answer the survey questions.

### a. Mr. Keegan Does Not Know Whether Respondents Could Reliably View the

---

[1] This is the subject of a concurrent motion *in limine* filed by Solid 21.

3

**Stimuli**

Mr. Keegan's respondents took the survey over the Internet and were not limited to taking the survey on any particular device (cell phone, laptop, etc.). Ex. 3 at 20:19 – 21, 22:2-4. He was unaware of what device respondents used to take his survey. *Id.* at 21:3-25. Mr. Keegan admitted that cell phones are a very common way to take surveys. Ex. 4 at 157:10-17. Exhibit 5 shows how one of the images respondents would appear to respondents (assuming it is printed on a standard 8.5x11 paper) if they viewed it on a typical 6-inch smartphone screen.[2] Ex. 5 (reproduced from Ex. 2 at 20). It is evident that at that size, the text on the image is illegible. Yet, respondents were asked to identify any brands they saw on that image. With this in mind, Mr. Keegan's survey results were predetermined.

**b. The Survey Does Not Reflect the Correct Consumer Universe**

"[O]ne of the most important factors in assessing the validity of an opinion poll is the adequacy of the 'survey universe', that is, the persons interviewed must adequately represent the opinions which are relevant to the litigation." *Brooks Shoe Mfg.*, 533 F. Supp at 80. This issue alone could be grounds for exclusion of an expert witness. *See VonRosenberg v. Lawrence*, 413 F. Supp. 3d 437, 455 (D.S.C. 2019) ("This defect with choosing the proper universe, skewing the results and excluding individuals who are relevant consumers, requires exclusion of [Keegan's] survey."). Mr. Keegan limited the universe of potential respondents by only three factors, and his universe is far too overinclusive. Respondents were required to: 1) have an income of at least $75,000, 2) be at least 18 years old, and 3) have purchased a "luxury watch" within the past three years and/or intend to purchase one within the next two years. Ex. 2, ¶¶ 47-48, 50.

---

[2] Screen size is measured from corner to opposite corner. Common smartphone models (such as Apple phones) are 3.5 to 6.7 inches. https://www.appmysite.com/blog/the-complete-guide-to-iphone-screen-resolutions-and-sizes.

Mr. Keegan's $75,000 income number was not based on any particular study or expertise – only his baseless opinion that those with an income of $75,000 could afford "luxury watches." Not only is there no indication that respondents would have a concept of what "luxury watches" are in the context of this case, but it is doubtful that those with such income could afford the rarefied products that are at issue, with watches commonly costing tens of thousands of dollars. Ex. 3 at 42:19 – 43:11. Notably, Mr. Keegan was previously excluded from testifying because he surveyed the incorrect universe. *See VonRosenberg*, 413 F. Supp. 3d at 455. A similar result is warranted here.

### c. Mr. Keegan Failed to Filter Poor Quality Responses

While Mr. Keegan claims to have filtered out low-quality responses in his survey (Ex. 3 at 17:16 – 19:2, 19:20-25), it is clear that this effort failed because many respondents did not even answer the question posed. Where respondents were tasked with viewing an image and identifying any brands they saw, many responded with nonsensical answers such as "good and innovative" or "Looks fancy." *See, e.g.*, Ex. 6 at 81 col. 2 row 9, col. 2 row 12; Ex. 3 at 27:11 – 28:20. As these responses are not probative to the question presented, they be unhelpful to the trier of fact. *See Anheuser-Busch, Inc. v. Florists Ass'n of Greater Cleveland*, 603 F. Supp. 35, 38 (N.D. Ohio 1984) (lending "little credence" to a survey in which the questions posed to consumers elicited irrelevant responses). This is another flaw in Mr. Keegan's survey that alone or in combination with other flaws warrants exclusion.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff Solid 21 respectfully asks this Court to exclude the Expert Report and Testimony of Mark Keegan.

Dated: October 31, 2022

        */s/ David L. Hecht*
David L. Hecht
Hecht Partners LLP
125 Park Avenue, 25th Floor
New York, NY 10017
P: (212) 851-6821
dhecht@hechtpartners.com

*Counsel for Plaintiff Solid 21, Inc.*

**CERTIFICATE OF SERVICE**

I, David L. Hecht, hereby certify that on October 31, 2022, I served a true and correct copy of the foregoing **PLAINTIFF SOLID 21, INC.'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF MARK KEEGAN** to counsel of record via electronic filing.

                                               */s/ David L. Hecht*
                                               David L. Hecht